UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

SEAN W. WARDLOW,

    Plaintiff,

    v.

COMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:25-CV-466-GSL

## OPINION AND ORDER

This matter is before the Court on Plaintiff Sean Wardlow's appeal of the Social Security

Administration's Decision dated August 9, 2024, which found that Wardlow was neither

disabled nor entitled to disability benefits. The parties have fully briefed the appeal [DE 20; DE

24–25]. For the reasons stated below, the Court **GRANTS** Plaintiff's requested relief and

**REMANDS** this matter to the ALJ for further proceedings consistent with this opinion.

## BACKGROUND

### I.    Procedural History

On December 22, 2022, Plaintiff applied for supplemental security income payments

under Title XVI of the Social Security Act (42 U.S.C. § 1382c(a)(3)), alleging disability

beginning on December 31, 2015. [DE 20 at 3; DE 24 at 1]. Plaintiff's application was denied

both initially and on reconsideration. [DE 20 at 3]. Following a hearing on June 27, 2024, an

Administrative Law Judge (ALJ) issued an unfavorable decision on August 9, 2024, finding

Plaintiff was not disabled at any time from December 22, 2022, to the date of the decision. [*Id.*;

DE 24 at 1]. The Appeals Council declined to assume jurisdiction over the matter on July 1,

2025, [DE 11 at 6], and Plaintiff's appeal soon followed on September 3, 2025. [DE 1]. This Court has jurisdiction under 42 U.S.C. § 405(g).

## II.    The ALJ's Decision

To determine disability for purposes of evaluating claims for supplemental security income benefits, the ALJ is required to follow the standard five-step sequential process established under 20 C.F.R. §§ 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 22, 2022. [DE 11 at 17]. At step two, the ALJ found Plaintiff had the following severe impairments: lumbar degenerative disc disease, sacroiliitis not elsewhere classified, spondylitis, morbid obesity, and chronic pain syndrome. [*Id.*]. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. [*Id.* at 18]. The ALJ then determined that, based on the entire record, Plaintiff had the residual functional capacity (RFC) to perform light unskilled work with the following limitations:

- Plaintiff is limited to lifting, carrying, pushing, and pulling ten-pounds frequently and twenty-pounds occasionally;
- Plaintiff can sit and/or stand for six hours in an eight-hour workday;
- Plaintiff should not climb ropes, ladders, or scaffolds;
- Plaintiff can occasionally kneel, crouch, and crawl;
- Plaintiff can occasionally bend and stoop;
- Plaintiff can occasionally use ramps and stairs, and can also perform the balance required of such activities;
- Plaintiff should not work on uneven surfaces and should avoid working on wet and slippery surfaces;
- Plaintiff should not perform work at exposed heights and open and dangerous machinery, such as those with fast moving and exposed blades and open flames;

- Plaintiff cannot perform overhead work or overhead reaching with the left upper extremity.

[*Id.* at 18–28].

At step four, the ALJ found that Plaintiff does not have any past relevant work. [*Id.* at 28]. Finally, at step five, the ALJ determined that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed through the date last insured. [*Id.*]. According to testimony from the vocational expert, the following example jobs existed: collator operator (31,000 jobs), cashier (448,000 jobs), and price marker (165,000 jobs). [*Id.* at 28–29]. The ALJ therefore concluded that Plaintiff was not disabled. [*Id.* at 29].

## **LEGAL STANDARDS**

### I.     **Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision so long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but cannot "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination[.]" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Nonetheless, the Court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Essentially, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## II.     Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). To qualify as "disabled" under the Act, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" is defined as work-related activity involving significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

These Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(i)–

4

(v).[1] The steps anchoring the ALJ's analysis are as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a medically severe impairment; (3) whether the claimant's impairment meets or equals one listed in the regulations; (4) whether the claimant can still perform past relevant work; and (5) whether the claimant can perform any other work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is deemed severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1522(a); 416.922(a). At step three, a claimant is "disabled" if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If not, the ALJ must then evaluate the claimant's residual functional capacity (RFC), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545; 416.945. The ALJ uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. §§ 404.1520(e); 416.920(e). Where the claimant cannot perform such work, the claimant is "disabled." The claimant carries the initial burden of proof at steps one through four, while the burden shifts to the Commissioner under step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## **DISCUSSION**

---

[1] § 404.1520 governs social security disability insurance benefits under Title II of the Social Security Act, whereas § 416.920 governs supplemental security income benefits under Title XVI. Despite this, both sections rely on the same definition of "disability" and the exact same five-step sequential evaluation process for determining disability.

Plaintiff raises two grounds for remand: first, that the ALJ's RFC finding was unsupported by substantial evidence in the record; and second, that the ALJ's credibility findings were unsupported by substantial evidence and were patently wrong. [DE 20 at 1]. Because the Court agrees with Plaintiff as to his first argument, the Court will focus on that issue alone.

Plaintiff argues the ALJ's RFC determination, particularly that regarding Plaintiff's lateral epicondylitis of the right elbow, was unsupported by substantial evidence because he (1) failed to confront entire lines of evidence relevant to the functionality of Plaintiff's dominant upper extremity and (2) failed to appropriately consider the durational requirement as part of assessing a qualifying "disability" under 42 U.S.C. § 423(d)(1)(A). [DE 20 at 9]. Under § 423(d)(1)(A), a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See also* 20 C.F.R. § 416.909 (reiterating the Social Security Act's durational requirement). In assessing Plaintiff's right elbow pain, the ALJ explained that he would not incorporate a limitation stemming from Plaintiff's lateral epicondylitis of the right elbow because the impairment "fails durationally, as it is of more recent complaint and the record does not establish such imposes significant limitations of function for twelve months in duration." [DE 11 at 20].

The ALJ indeed engaged the question of whether Plaintiff's lateral epicondylitis *had persisted* for twelve months or more, reviewing occupational therapy notes between December 7, 2023, and March 2024 and finding "no concerns" where hypertension medication was working well. [*Id.* at 25]. The ALJ even cited relevant medical records, such as Exhibits 9F and 11F, in explaining his findings. [*See id.* at 20]. Yet ironically, the ALJ did not discuss contradictory

notes found within those very same medical records, and apparently even perceived occupational therapy notes directed toward Plaintiff's right elbow as pertaining to his ability to stand. [*Id.* at 20]. *See Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ 'cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding.'")). What's more, the ALJ failed to consider the other half of § 423(d)(1)(A)'s durational requirement: whether the impairment could be *expected to last* for a continuous period of twelve months or more.

During the June 2024 Administrative Hearing, Plaintiff explained that his right elbow pain had been bothering him for approximately one year. [*Id.*]. Plaintiff testified that he had received an injection for his lateral epicondylitis of the right elbow but that it did not help. [*Id.* at 50]. He further testified that although he observed some improvement while participating in occupational therapy, such as an increase in grip strength, his grip strength measurement was still below the average. [*Id.*]. Importantly, these same occupational therapy notes reveal that while Plaintiff made improvements in his grip strength and ability to extend his arm over the course of several sessions between March and April 2024, Plaintiff was still "not at a level that would be back to baseline" such that his functional or occupational performance was improving. [*Id.* at 719]. Plaintiff's occupational therapist noted that Plaintiff would benefit from continued therapeutic intervention and that despite his improvements in strength and pain tolerance, as well as the recognition that the number of insurance-approved sessions had been exhausted, Plaintiff nonetheless needed ongoing skilled intervention. [*Id.* at 719; *see also id.* at 656, 710, 713–14, 723].

The ALJ's decision does not address at any point whether Plaintiff's lateral epicondylitis was expected to persist for a duration of twelve months or more. Without considering this

component of the durational requirement, the Court is left without a logical bridge to ascertain whether Plaintiff's impairment was, or could have been, disabling.[2] *See Terry*, 580 F.3d at 475. Accordingly, remand is warranted. *See, e.g.*, *McQuestion v. Astrue*, 629 F. Supp. 2d 887, 904 (E.D. Wis. 2009) (citing SSR 85–52)[3] (remanding case to allow ALJ to consider plaintiff's testimony as it related to the durational requirement and the medical equivalence).

## <u>CONCLUSION</u>

For the reasons above, the Court **GRANTS** Plaintiff's requested relief [DE 20 at 17], **REVERSES** the ALJ's decision, and **REMANDS** this matter to the ALJ for further proceedings consistent with this opinion. The ALJ is instructed to consider the durational component of Plaintiff's lateral epicondylitis and any other appropriate grounds for remand raised by Plaintiff in his brief.

SO ORDERED.

ENTERED: June 30, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court

---

[2] The Supreme Court has explained that the Social Security Act will not grant benefits based on the "expected to last" language of § 423(d)(1)(A) if the claimant returns to work within the twelve-month period, even if such a return was not expected at the onset of the impairment. *See Barnhart v. Walton*, 535 U.S. 212, 223 (2002). While Plaintiff occasionally sold items on eBay, this was only performed occasionally over a period of a few months. [*See* DE 11 at 48]. Plaintiff also does not have any past relevant work from which to return. [*Id.* at 28]. Accordingly, this rule is not applicable to Plaintiff.

[3] SSR 82–52 has since been rescinded by SSR 23–1p, 2023 WL 8236247, which became effective on November 7, 2023. The same relevant language applies to both versions.